BRANDON C. FERNALD (SBN 222429)
FERNALD LAW GROUP APC
510 West Sixth Street, Suite 700
Los Angeles, California 90014
Telephone:  323-410-0320
Facsimile:  323-410-0330
Email:  brandon.fernald@fernaldlawgroup.com

JONATHAN T. SUDER (*Pro Hac Vice*)
MICHAEL T. COOKE (*Pro Hac Vice*)
CORBY R. VOWELL (*Pro Hac Vice*)
RICHARD A. WOJCIO, JR. (*Pro Hac Vice*)
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  mtc@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

Attorneys for Plaintiff
KAJEET, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC.,<br><br>              Plaintiff,<br><br>    vs.<br><br>CUJO LLC,<br><br>              Defendant. | CASE NO.<br><br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff KAJEET, INC. files this Complaint for Patent Infringement against Defendant CUJO LLC, alleging as follows:

## I.      THE PARTIES

1.      KAJEET, INC. ("Plaintiff" or "Kajeet") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7901 Jones Branch Drive, Suite 350, McLean, Virginia 22102.

2.      Defendant CUJO LLC ("Defendant" or "Cujo") is a limited liability company organized under the laws of Delaware with a principal place of business at 2150 Park Place, Unit 100, El Segundo, California 90245.  Cujo may be served with process by serving its registered agent, National Registered Agents, Inc. at 818 West Seventh Street, Suite 930, Los Angeles, California 60017.

## II.      JURISDICTION AND VENUE

3.      This is an action for infringement of United States patents under 35 U.S.C. §§ 271, *et seq.* Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

4.      Defendant maintains its lone established and regular place of business at 2150 Park Place, Unit 100, El Segundo, California 90245, within this District. Defendant develops and/or sells its products, including the Accused Products described herein, from this location.

5.      Defendant has sufficient minimum contacts with the Central District of California such that this venue is fair and reasonable.  Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activity. Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the Central District of California.

6.      Further, upon information and belief, Defendant makes or sells products that are and have been used, offered for sale, sold, and/or purchased in the Central District of California.  Defendant directly and/or through its distribution network, places

infringing products or systems within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold and/or used in the Central District of California.

7.    For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), respectively.

## III.    BACKGROUND AND FACTS

8.    Kajeet is the owner of all rights and title in and to U.S. Patent No. U.S. Patent No. 8,667,559 ("the '559 Patent") and U.S. Patent No. 7,899,438 ("the '438 Patent"). These patents are sometimes referred to collectively hereinafter as "the Asserted Patents." The respective inventions disclosed and claimed in the Asserted Patents were developed by the founders, entrepreneurs, and engineers of Kajeet and were assigned to Kajeet upon issuance.

9.    Kajeet is a U.S.-based company, founded in 2003, which develops software and hardware solutions promoting safe use of mobile devices by children both at home and in schools and libraries. Kajeet was founded by three fathers who sought to develop systems and methods ensuring safe use of mobile phones, tablets, computers, and other mobile devices by their children.

10.    Kajeet has become an industry leader in this area of mobile device management, developing innovations that led to the issuance of thirty-four U.S. patents to date, including the Asserted Patents, and having implemented its solutions in hundreds of school districts comprising thousands of schools across the nation. These innovations were directly developed by the founders and engineers at Kajeet as part of Kajeet's continuous work to protect children from inappropriate and distracting online content, and to enable schools and families to keep children focused and safe from the many potential dangers associated with unconstrained access to online content.

11.    The disclosure and claims of the Asserted Patents describe improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or

COMPLAINT FOR PATENT INFRINGEMENT

unconstrained access to some or all of the available functionality supported by the communication device. See, *e.g.*, the '559 Patent at 1:47-62.[1]  A typical scenario addressed by the Asserted Patents is that of a smartphone, tablet, or laptop used by a child. See, *e.g.*, the '559 Patent at 4:11-18; 4:38-44; and, 5:20-29. This is a relatively new problem that has arisen in the past decade as mobile communication devices have become more popular and more widely used throughout society, including in schools and at home by children. See, *e.g.*, the '559 Patent at 1:51-58; 2:10-21; 4:42-58; 6:34-409; 12:48-62; and, 14:13-23.

12.    Mobile smartphones appeared in the mid-1990s as Personal Digital Assistants ("PDAs").  These devices expanded the set of features accommodated by handheld mobile communication devices and their appearance coincided with the rise in popularity and use of the World Wide Web.  In 2007, Apple released the first iPhone and in 2008 released the App Store.  This signaled the beginning of mainstream smartphone ownership and usage and, in particular, ownership and usage of feature-rich smartphone devices by teens and children. Also, during this timeframe, other Internet-capable, mobile computing devices greatly expanded in popularity, including tablet devices, including iPads and Kindles, as well as laptop devices, including the Google Chromebook.  Increasingly, these devices are put in the hands of teens and children both by their parents and by schools, giving them ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality.  Further, this new access is cheap, anonymous, and readily-available at any time, day or night from virtually anywhere.  Parents, as well as school administrators and others, have struggled with addressing this newly created problem ever since.

---

[1] All citations to the Patent-in-Suit are to the '559 Patent, which is attached hereto as Exhibit A, unless otherwise stated.  The citations provided are illustrative rather than exhaustive and therefore do not comprise complete listings of all portions of the specification addressed to each topic for which citations are provided.  Further, because each of the Patents-in-Suit share a common specification, the cited passages are equally applicable to each of the Patents-in-Suit.

COMPLAINT FOR PATENT INFRINGEMENT

13.    The Patents-in-Suit are addressed to specific systems and methods for addressing this new problem faced by parents, teachers, business owners, and the like. The Patents-in-Suit recognize that old-world methodologies, such as simply taking the devices away, do not truly address the problem at hand and undermine the safety benefit of device ownership – continuous access for communication, such as always providing a direct means for a parent to call its child or vice versa. For device ownership by teens and others to provide this benefit, the device is necessarily in the possession of the teen at times when he or she is ***away from*** parents, teachers, and the like. Old-world monitoring of device use to preventing inappropriate use is therefore also ineffective and does not address the true context of this new problem in society created by the development and proliferation of feature-rich mobile communication devices.

14.    As explained in the specification of the Patents-in-Suit, prior art systems and methods for controlling mobile communication device usage in such settings were ineffective. For example, prepaid phone plans placed limits on the charges that could be run up on a mobile communication device but did so through toggling access to the communication network off once the account reached a zero balance. Beforehand, access to the communication network may be unconstrained while after, no access is provided whatsoever. This control scheme was ineffective for preventing misuse of the mobile communication device by a child while still providing access to desirable features. See, *e.g.*, the '559 Patent at 2:36-44.

15.    Likewise, unlimited use smartphone service plans could prevent the accumulation of excessive usage costs but were ineffective to prevent overuse or use of a mobile communication device at inappropriate times or to access inappropriate content. See, *e.g.*, the '559 Patent at 3:7-16.

16.    Other solutions involving control through enforcement of decisions based upon policies defining permitted use that were set and stored only in accessible portions of the memory of the device itself, such as in the volatile memory of the device. These solutions were likewise ineffective as the policies upon which decisions effecting

COMPLAINT FOR PATENT INFRINGEMENT

control were vulnerable to manipulation or deletion by virtue of their only being stored in accessible portions of memory of the computing device.  Further, such solutions required separate and independent configuration of each computing device to be controlled, resulting in increased administrative costs.

17.    The Patents-in-Suit state that the systems and methods disclosed therein "are effective tools for any phone user that requires some level of supervision, such as a handicapped individual, a person suffering from dementia, a corporate employee, or even an adult that has shown poor judgment in the past and needs help managing their affairs." '559 Patent at 5:34-41.  The Patents-in-Suit also state that:

> The ability to regulate **when a phone can be and cannot be used can also be of value to parents and school districts** with respect to resolving one of the greatest conflicts that exist between parents/students and school administrators - mobile phone usage by kids. Parents want children to have a mobile phone with them so the child can call the parent if need be, i.e., if someone forgets to pick the child up after school. School districts do not want the children to have the phones at all **because the students tend to misuse the phones, i.e., to call friends during school, to cheat, to engage in illegal activity, etc**. While the school districts believe that children should be relegated to only using the school phones if the children need to contact a parent, the parents want the children to have the phones with them in case they get locked out of the school, get lost on a field trip, etc. '559 Patent at 12:48-62 (emphasis added).

The Patents-in-Suit therefore recognize that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance with a scheme that prevents access to them by the user of the device, who may have poor judgment or be motivated to otherwise misuse the communication device.

18.    The specification the Asserted Patents discloses, among other innovations, systems and methods for providing access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate because of cost (e.g., downloadable games or other applications), type of

content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. See, *e.g.*, the '559 Patent at 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The Asserted Patents disclose control embodiments applying decisions based upon policies defining acceptable and unacceptable uses of a mobile communication device. The policies may be based on a variety of contexts which are set by administrators (e.g., parents or teachers). In accordance with certain embodiments of the inventions disclosed, the policies are set and stored at the server level to provide simultaneous control over use of one or more mobile communication devices. See, *e.g.*, the '559 Patent at embodiment of Fig. 2; 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The intrinsic record states this at Office Action Response dated October 17, 2013 filed during prosecution of the '559 Patent at p. 10 (distinguishing a particular embodiment claimed therein on the basis that the prior art "does not describe a ***distributed architecture where policy decisions are performed at the server level*** and those policies are enforced on the phone itself.")(emphasis added). A true and correct copy of this Office Action Response is attached hereto as Exhibit C and incorporated for all purposes.

19.    Application of use decisions based upon a policy stored remote from the controlled computing device represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society. Embodiments of the inventions disclosed and claimed in the Asserted Patents implementing this unconventional scheme provide for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

20.    Cujo is a software developer of solutions accommodating feature management of communication devices configured for operation on communication networks, including laptops, tablets, smartphones, and the like. Each comprises a computing device usable to access online content and applications over a

COMPLAINT FOR PATENT INFRINGEMENT

communication network managed by a service provider, such as an internet service provider (ISP).

21.    The Accused Products of Cujo include all versions of the Cujo's Smart Firewall products and services and the AI Platform for Network Operators products and services, and in particular its Compass products.  The Accused Products accommodate management of mobile communication devices accessing content over communication networks via application of remotely stored master policies set by administrators (i.e., parents).

22.    Cujo's Smart Firewall is a system of hardware (the Cujo appliance) and software (the Cujo App) configured for implementation within a home network to accommodate management of computing devices operating on the communication network, including tablets, smartphones, laptops, gaming consoles, cameras, smart gadgets, and the like.  Smart Firewall effects policy-based control over communication devices via insertion of the Cujo appliance within the communications network accessing the Internet.

23.    The Smart Firewall appliance connects directly to the router and is controlled using the Cujo App which is available for download on Android and iOS devices.

24.    Administrators (i.e., parents) download the Cujo App and use it to set up device and user profiles as well as rules applicable to each for defining at least content-based and time-based rules.  These rules comprise one or more sets of master policies applied to control use of one or more communications devices.  The master policies are set and stored on Cujo's cloud servers.  Local copies of the master policies are stored on the Cujo Smart Firewall appliance and are regularly updated.

25.    The Smart Firewall appliance is inserted into a home network via connection to a router or gateway device accessing the Internet.  The Smart Firewall may be connected directly to the router and configured to operate in DHCP mode.  In

COMPLAINT FOR PATENT INFRINGEMENT

this mode, the Smart Firewall acts as a DHCP server and takes over IP address assignment for all devices connected to the home network to implement usage policies.

26.    Alternatively, the Smart Firewall may be connected in "Bridge Mode" with the Smart Firewall connected between a router accessing the Internet and an access point / switch device through which communications devices access the network.  In this configuration, all network traffic for devices connected to the access point / switch passes through the Smart Firewall for inspection and policy application to control use.

27.    The Smart Firewall appliance connects to the Cujo Cloud Service using an encrypted channel to receive and update local copies of the master usage policies configured using the Cujo App and selectively applied to controlled devices.  As such, the Smart Firewall functions as a guarded gateway between computing devices communicating over the home network and the Internet.  All attempts to use controlled devices in a manner requiring communication over the home network pass through the router and the Smart Firewall appliance.  Information descriptive of attempted uses is formatted into usage requests for comparison to applicable policies defining acceptable use.    Likewise, attempts to communicate with a controlled device over the communication network by other devices are routed through the Smart Firewall appliance and information descriptive of the desired communication is formatted into usage requests to which acceptable use policies are applied.

28.    Data relating to attempted network communications including, for example, the device making the request and the ISP address to be accessed, are obtained and compared to applicable policies defining acceptable and unacceptable network usage.  For requests permitted by the applicable usage policies, Smart Firewall transmits data back to the router and/or the managed device allowing the requested communication.  For requests not permitted by one or more applicable usage policies, Smart Firewall transmits data back to the router and/or the managed device blocking the requested communication.  A notification of the blocked request is transmitted to one or both of the requesting device and an administrator.

COMPLAINT FOR PATENT INFRINGEMENT

29.    Smart Firewall accommodates implementation of time-based policies defining permissible and impermissible device usage, including time limits and schedules applied by device and/or by profile.    Limits applied by profile are simultaneously applied to each device associated to a particular user profile.    The Smart Firewall also applies application, service, shopping and social media related policies to effect feature management on controlled devices.    The Smart Firewall additionally accommodates access to device usage history data and timelines through the Cujo App as well as the ability to "pause" the Internet.

30.    In operation, users of a managed device execute a function on the managed device requiring communication over a network.    For example, a user of a managed device may attempt to access a website using a web browser on the managed device which is connected to the Internet using a gateway device or router.    Upon information and belief, the Smart Firewall appliance detects this attempted use and formats a usage request for comparison to applicable usage policies.    A copy of master policies set via the Cujo App are stored within and/or accessible to the Smart Firewall appliance and are regularly updated.    The request is compared to all applicable policies to determine, at least, whether the attempted communication or function is allowed or prohibited. Policy decisions are made in real time in response to requests by the Smart Firewall. Data indicative of decisions whether to allow or deny such requests are communicated back to the router and/or the managed device.    Decisions are enforced via permitting or blocking execution of the requested function or communication.

31.    Upon information and belief, the Smart Firewall effects feature management over devices connected to a home network without storing the master policies applied on the devices, themselves.

32.    Additionally, or alternatively, usage requests and policy decisions may be communicated to administrators via alerts or via access to usage logs cataloguing all requests for execution of functions and communications initiated by a communication device through the Cujo App.

COMPLAINT FOR PATENT INFRINGEMENT

33.    Cujo provides instructions to its customers and users of the Smart Firewall demonstrating how to install, set up, and use the Smart Firewall to manage computing devices connected to a home network, including at least the CUJO Setup Guide attached as Exhibit D and incorporated for all purposes.  Use of the Smart Firewall in accordance with these instructions constitutes direct infringement of the Asserted Patents by end users of the Accused Products.

34.    On April 13, 2018, Kajeet sent a letter to Cujo to put Cujo on notice of the Kajeet patents and of Kajeet's claims of infringement of at least the Asserted Patents by Cujo via its making, using, and selling of the Smart Firewall.  Attached to this correspondence was a representative claim chart detailing Kajeet's infringement allegations which are consistent with those presented herein.  Cujo responded to Kajeet's letter and allegations both directly and through its counsel in May 2018.  Cujo has had actual knowledge of each of the Asserted Patents since at least April 2018, therefore, and has had actual knowledge of Kajeet's claims of infringement relating to the Smart Firewall since that time.  Upon information and belief, Cujo continues to make, use, and sell the Smart Firewall product and services, including ongoing subscriptions, to its customers.

35.    Cujo's AI Platform product and services, including the Compass software product, is a software and firmware solution marketed to network operators.  The AI Platform comprises a network level software suite accommodating network security, control, and analytics.  Embedded within the AI Platform functionality and the Compass software product are "Content Controls."  Content Controls are applied through creation of user profiles comprising master usage policies to which devices are associated.  Policies are set to control content accessing, application usage, and time-of-day restrictions on managed devices.  Policies may be set defining schedules and time limits for use of one or more applications on the device and/or network usage to access content.

36.    Cujo's Content Controls ensure that the end users get a more personalized experience inside and outside of the home.  The user benefits of the AI Platform and the Compass product allow users "to make the most out of their connected home or business and ensure that the network operator is delivering significant value withing the broadband environment". [2] The Compass product provides tools to block sites, topics, and content from access by children. It also provided help for parents to set and enforce time limits and to schedule rules limiting device usage to acceptable times and amounts. Master policies defining permitted use of controlled devices are set by administrators via a mobile application user interface and are stored at Cujo servers.  Copies of master policies are additionally stored on local network devices, such as routers or gateway devices, and are regularly updated.  Policies are applied to allow or block requested uses of features on a controlled device in accordance with content-based, time-based, or other applicable policies.

## COUNT I

### PATENT INFRINGEMENT

### U.S. Patent No. 8,667,559 B1

37.    Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

38.    On March 4, 2014, United States Patent No. 8,667,559 B1 ("the '559 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint, the '559 Patent remains in force.  A true and correct copy of the '559 Patent is attached hereto as Exhibit A and made a part hereof.

39.    Kajeet is the owner of all right and title in the '559 Patent, including all rights to enforce and prosecute action for infringement of the '559 Patent and to collect damages for all relevant times against infringers of the '559 Patent.  Accordingly, Kajeet

---

[2] *See*, https://cujo.com/compass/.

COMPLAINT FOR PATENT INFRINGEMENT

possesses the exclusive right and standing to prosecute the present action for infringement of the '559 Patent by Cujo.

40.    The '559 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet or other communication network, for example.  The systems and methods claimed accommodate enforcement of decisions granting or denying requests to communicate with remote computing devices over a communication network.  The decisions are based on the application of one or more relevant use policies which may be administrator-configurable and may be stored remotely from the controlled computing device.  Decisions to grant or deny communication requests from the controlled device may be made and effectuated in real-time.

41.    Independent claim 27 of the '559 Patent and each dependent claim depending therefrom are directed to "methods for controlling a computing device configured to execute a function using a communication network managed by a service provider." '559 Patent at Claim 27.  These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision "being based on a policy stored at the server…," and that "the communication being enabled or disabled without storing the policy on the computing device." *Id*.

42.    These limitations mandate that the decision applied to effect control over the computing device is based on a policy stored at a server remote from the computing device.  The decision is made upon detection of an attempt by the computing device to perform a function on the communication network.  These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device including that the server storing the policies upon which decisions are based being meaningfully apart from the computing device.  This arrangement resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them.

43.   These limitations additionally cover communications initiated by a third-party device and directed to a managed device.  Effecting control over these incoming communications to a communication device was likewise not well-understood, routine, or conventional to one of ordinary skill in the art.

44.   Claim 27 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require the application of decisions based upon remotely stored polices.  Remote storage of the policies upon which decisions are based makes them less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage. Communication device management in accordance with these claimed methods improves the security, effectiveness, and robustness of control accommodated.  As such, the claimed methods are directed to patent eligible subject matter.

45.   Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims require storing usage policies upon which decisions are based at a server remote from the computing device, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods.  Prior art control was not premised on application of decisions based upon policies stored at the server level. Instead, the prior art applied decisions based on policies set up on the computing device itself and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions to effect control that are based upon policies stored at the server level, remote

COMPLAINT FOR PATENT INFRINGEMENT

form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.[3]

46.    Cujo has had actual knowledge of the existence of the '559 Patent since at least April 13, 2018 for at least the reasons discussed above.  As such, Cujo's infringement of the '559 Patent has been willful since at least April 13, 2018.

47.    Cujo, without authority, consent, right, or license, and in direct infringement of the '559 Patent, makes, has made, uses, and sells the Accused Products which practice the system and method claimed in at least claim 27 of the '559 Patent, among others.  In addition, Cujo's quality testing and demonstrations of operation of the Accused Products to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '559 Patent.

48.    Cujo actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '559 Patent.  Cujo knows that the Accused Products are especially designed for and marketed toward infringing use by Cujo's customers, to implement feature management of computing devices.  Cujo has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Cujo provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '559 Patent. These instructions are provided by Cujo as user manuals and online content made available by Cujo through its website. Such conduct by Cujo was intended to and

---

[3] These statements are further supported by the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 144, 144-7, and 144-11). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

COMPLAINT FOR PATENT INFRINGEMENT

actually did result in direct infringement by Cujo's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States.

49. Cujo contributes to the infringement of at least claim 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c). The Accused Products are especially designed for controlling use of computing devices in the manner described above. Upon information and belief, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network. Setup and use of the Accused Products by Cujo's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claim 27 of the '559 Patent.

50. Kajeet expressly reserves the right to assert additional claims of the '559 Patent against Cujo.

51. Kajeet has been damaged as a result of Cujo's infringing conduct. Cujo is, thus, liable to Kajeet in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52. Based on Cujo's actual knowledge of the '559 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least April 13, 2018, if not earlier, as well as Cujo's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## COUNT II

### PATENT INFRINGEMENT

### U.S. Patent No. 7,899,438 B2

53.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

54.     On March 1, 2011, United States Patent No. 7,899,438 B2 ("the '438 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint the '438 Patent remains in force.  A true and correct copy of the '438 Patent is attached hereto as Exhibit B and made a part hereof.

55.     Kajeet is the owner of all right and title in the '438 Patent, including all rights to enforce and prosecute action for infringement of the '438 Patent and to collect damages for all relevant times against infringers of the '438 Patent.  Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '438 Patent by Cujo.

56.     The '438 Patent includes claims to systems and methods for managing computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet via one or more servers or other network devices, for example.  The systems and methods comprise network devices through which usage requests are routed along with decision making and enforcement functionality accommodated by software and/or hardware modules.  Policy decisions are based on the application of one or more relevant usage policies which may be administrator-configurable and are stored remotely from the controlled computing device.  Decisions to grant or deny requests are enforced by software and/or hardware modules on a network device.

57.     More specifically, independent claim 27 of the '438 Patent and each dependent claim depending therefrom are directed to a "system for managing in real-time a computing device."  '438 Patent at Claim 27.  These claimed systems explicitly

require "a policy decider housed within a network device" for "storing a list of policies to control one ore more features or functions associated with the communication device". *Id.* The policy decider automatically decides "to accept or deny a request sent to or from the communication device". *Id.* The claimed systems also require a "policy enforcer housed within a network device" for "enforcing a decision by the policy decider" by either "notifying the user of the denied request and taking one or more actions consistent with the denied request or taking one ore more actions consistent with the accepted request". *Id.*

58.    These limitations mandate that the policies applied to manage the computing device be stored apart from the computing device based on the requirement that the policies are stored within a network device on the communication network. These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device (including that the device storing the policies is meaningfully apart from the computing device) which resulted in improved operation through at least increased resilience to undesirable accessing of policies by a user of the device to manipulate or delete them.

59.    These limitations additionally cover communications requested by a third-party device directed to a device managed by a control system as claimed in claim 27 of the '438 Patent and its dependent claims. Effecting control over these incoming communications to a communication device was not well-understood, routine, or conventional to one of ordinary skill in the art.

60.    Claim 27 of the '438 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require remote storage of usage polices which are thereby less vulnerable to manipulation and deletion by the user of the controlled device(s) while still accommodating real-time control concurrent with device usage. Communication device management in accordance with the systems claimed improve the functionality of the computer-based system through improved

security, effectiveness, and robustness of control accommodated. As such, the claimed systems are directed to patent eligible subject matter.

61.    Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above. These claims apply usage policies stored remote from the managed devices, an unconventional arrangement at the time which yielded improvements in the operation of communication device control systems. The few communication device control systems and methods available at the time of invention of the subject matter claimed relied upon storing settings and policies within accessible portions of the device's memory. As such, these policies were accessible to users of those devices for manipulation and/or deactivation or deletion, circumventing the control system entirely and requiring that each controlled device be configured separately and individually. The system of claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time applying remotely stored policies to effect real-time control over communication devices and provide other benefits, as noted herein and above.[4]

62.    Cujo has had actual knowledge of the existence of the '438 Patent since at least April 13, 2018 for at least the reasons discussed above. As such, Cujo's infringement of the '438 Patent has been willful since at least April 13, 2018.

63.    Cujo, without authority, consent, right, or license, and in direct infringement of the '438 Patent, makes, has made, uses, and sells the Accused Products which embody the system claimed in at least claim 27 of the '438 Patent, among others.

---

[4] See also the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 144, 144-7, and 144-11). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

COMPLAINT FOR PATENT INFRINGEMENT

64.     Cujo actively induces infringement of at least claim 27 of the '438 Patent by its customers and end users of at least the of the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).   A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '438 Patent. Cujo knows that the Accused Products are especially designed for and marketed toward infringing use by Cujo's customers, to implement feature management of computing devices.   Cujo has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Cujo provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '438 Patent. These instructions are provided by Cujo as user manuals and online content made available by Cujo through its website. Such conduct by Cujo was intended to and actually did result in direct infringement by Cujo's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States.

65.     Cujo contributes to the infringement of at least claim 27 of the '438 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).   The Accused Products are especially designed for controlling use of computing devices in the manner described above.   Upon information and belief, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network.   Setup and use of the Accused Products by Cujo's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claim 27 of the '438 Patent.

66.     Kajeet expressly reserves the right to assert additional claims of the '438 Patent against Cujo.

COMPLAINT FOR PATENT INFRINGEMENT

67.   Kajeet has been damaged as a result of Cujo's infringing conduct.  Cujo is, thus, liable to Kajeet in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

68.   Based on Cujo's actual knowledge of the '438 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least April 13, 2018, if not earlier, as well as Cujo's objective recklessness in continuing to offer for sale and selling the of the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## VI.  JURY DEMAND

69.   Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.   Judgment that one or more claims of the Asserted Patents have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patents have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b.   Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

c.   Judgement that Defendant's infringement is willful from the time Defendant was made aware of the infringing nature of its products and

COMPLAINT FOR PATENT INFRINGEMENT

methods and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.    That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.    That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

e.    That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of one or more claims of the Asserted Patents or, in the alternative, if the Court finds that an injunction is not warranted, Plaintiff requests an award of post judgment royalty to compensate for future infringement;

g.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  January 9, 2020      /s/ *Brandon C. Fernald*

Brandon C. Fernald
FERNALD LAW GROUP
510 W. 6TH Street, Suite 700
Los Angeles, California 90014
Telephone:  (323) 410-0320
Fax:  (323) 410-0330
Email:  brandon.fernald@fernaldlawgroup.com

Attorney for Plaintiff
KAJEET, INC.

Of Counsel:

Jonathan T. Suder

COMPLAINT FOR PATENT INFRINGEMENT

Michael T. Cooke
Corby R. Vowell
Richard A. Wojcio, Jr.
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas  76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  mtc@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

COMPLAINT FOR PATENT INFRINGEMENT